IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2002

## STATE OF TENNESSEE v. SYBIL BAKER

**Direct Appeal from the Circuit Court for Franklin County**
**No.13282      J. Curtis Smith, Judge**

---

**No. M2001-02146-CCA-R3-CD - Filed February 18, 2003**

---

The appellant, Sybil Baker, was convicted by a Franklin County jury of one count of aggravated assault, one count of reckless endangerment, and one count of leaving the scene of an accident involving property damage.  The trial court properly merged the convictions for aggravated assault and reckless endangerment and imposed a sentence of five years to be served in community corrections.  On appeal, the appellant contends that the evidence is not sufficient to support the convictions of aggravated assault, reckless endangerment, or leaving the scene of an accident. Following a review of the record and the parties' briefs, we affirm the judgments of the trial court as to the appellant's convictions and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

Francis W. Pryor, Jr., Jasper, Tennessee, for the appellant, Sybil Baker.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; J. Michael Taylor, District Attorney General; and William Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The present offenses occurred following an altercation between the appellant and the victim, Barbara Miller.  In March 2000, the victim's brother, Nathaniel Williams, lived with the victim at 208 Vine Street in Winchester.  Williams was the father of the appellant's daughter.  He was on parole and had been told to have no contact with the appellant.  On March 19, 2000, while driving to the grocery store, the victim passed the appellant's vehicle coming out of an apartment

complex. When the victim returned home, she checked her telephone caller identification system (caller ID) and saw the appellant's telephone number.

The next morning, March 20, 2000, the victim noticed that the appellant's boyfriend, Michael Burnette, was in the victim's backyard removing tools from his employer's toolshed. At trial, the victim testified that upon seeing Burnette in her backyard, she stepped outside, showed him the telephone number on the caller ID, and asked if it was the appellant's number. When Burnette responded affirmatively, the victim asked Burnette to tell the appellant to stop calling her home.

Later that morning, while standing in the doorway of her home, the victim saw the appellant get out of her vehicle at the end of the victim's driveway. The appellant walked toward the victim, saying that she had come to explain why her telephone number was on the victim's caller ID. The two women began arguing, and "one word led to another." The appellant got back into her vehicle and then threw a cup of water into the victim's face. In response, the victim threw a container of pepper spray and struck the appellant's car. According to the victim, the appellant "backs back, runs in my yard and knocked me down with her vehicle. Hits the car parked on the side of the road. And she tries to run over me at least three or four times." The vehicle's tire struck the victim's hand, wedging her hand between the tire and the concrete sidewalk. Following the incident, the victim was hospitalized. She had rotator cuff surgery and, at the time of trial, was unable to fully raise her arm.

The victim stated that she did not strike the appellant and further denied that she threatened the appellant with a gun. The victim admitted telling Burnette that if the appellant did not stop calling, she was "going to whoop her butt." The victim maintained that during the altercation she had only a telephone and a can of pepper spray in her possession.

Officer Richard Tucker of the Winchester Police Department went to the victim's home on March 20, 2000, to investigate and photograph the scene. He recalled that when he arrived at the victim's home, she was wearing a gray tee shirt. The victim's shirt was wet. Officer Tucker also spoke with the appellant on the day of the offense. The appellant told Officer Tucker that she had been involved in an altercation with the victim and the victim had "pulled a gun or something on her." Officer Tucker returned to the victim's home, but he did not see a gun and the victim denied having a gun.

Michael Burnette testified at trial on behalf of the appellant. In March 2000, Burnette was getting his employer's tools from a shed located near the victim's backyard. The victim approached Burnette and asked if the telephone number on her caller ID was the appellant's number. When Burnette responded that the number was indeed the appellant's number, the victim requested that Burnette tell the appellant, "if she comes back over here or calls my house again that [the victim] was going to blow [the appellant's] brains out." Burnette telephoned the appellant and relayed the message. Michael Burnette's cousin, Alan Burnette, lived next door to the victim. Michael Burnette testified that the appellant frequently brought food to him at Alan's home.

At trial, the appellant testified that she did not call the victims' home on March 19, 2000. She explained that the victim's brother had called the appellant's home "17, 18, 19 times." As she was removing the numbers from her caller ID, the appellant accidentally "punched" the victim's number. The next morning, March 20, 2000, Michael Burnette called the appellant and asked why she had been calling the victim's home. The appellant became angry and "hung up the phone with him." Later that morning, she decided to go to Alan Burnette's home to determine where Michael was working so she could apologize to him.

When the appellant arrived at Alan Burnette's home, she saw the victim standing on her front porch, talking on the telephone. The victim came to Alan Burnette's home and "[o]ne word led to another." According to the appellant, the victim "reaches off into her bra, pulls out a gun, jacked me up in my collar, put the gun to my head and tell me, 'Bitch, I will blow your brains out.'" When the victim released her, the appellant got back into her car, explaining that she was frightened and "just freaked out." The appellant picked up a cup of "pop" and threw it in the appellant's face. The appellant claimed that the victim struck appellant's car with the telephone or the gun.

The appellant admitted that her car struck the victim, but maintained that her action was not intentional. According to the appellant:

> At this time I pulled my car in reverse and I backed up. When I backed up I hit [the victim] with my vehicle. After I hit her with my vehicle I really panicked. I put my car in drive and boom, I ran into her husband's car, which she's saying that it's his, and I busted out the headlight of her husband's car. Didn't know I was in a zone. Didn't know which way I was going, shook up from her putting this gun to my head. After I hit her husband's car I put my car back in reverse, backed up. Somehow I ended up in her yard. I went all the way to [the victim's] porch, hit her porch, boom, with my car. This is how I left the deep tracks in her yard. Somehow or other I finally backed up and got out. When I did I went straight to the projects, a nervous wreck, to my friend Pat Hendon's house.

Shortly thereafter, the appellant went to the Franklin County Courthouse and attempted to "take out a warrant on [the victim] before she took out a warrant on [the appellant]." The appellant admitted that she was at fault in striking the victim, but maintained that she was frightened and provoked by the victim.

The appellant was indicted on one count of aggravated assault, one count of reckless endangerment, one count of vandalism, and one count of leaving the scene of an accident involving property damage. The jury found her not guilty of the charge of vandalism, but convicted her of all other charges. The trial court merged the conviction of reckless endangerment with the conviction of aggravated assault. On appeal, the appellant contends that the evidence is not sufficient to support the convictions of aggravated assault, reckless endangerment, or leaving the scene of an accident.

-3-

## II. Analysis

In Tennessee, appellate courts accord considerable weight to the verdict of a jury in a criminal trial. In essence, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that "no reasonable trier of fact" could have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given to the evidence are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

With respect to the aggravated assault conviction, the indictment charging the appellant alleged that the appellant "unlawfully (knowingly) (intentionally) (recklessly) ma[d]e an assault upon the person of one Barbara Miller, and did cause the said Barbara Miller to reasonably fear imminent bodily injury, said assault being accomplished by the (use) of a deadly weapon, to wit: a motor vehicle, in violation of T.C.A. 39-13-102." The applicable statute provides:

> (a) A person commits aggravated assault who:
> (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
> (A) Causes serious bodily injury to another; or
> (B) Uses or displays a deadly weapon; or
> (2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
> (A) Causes serious bodily injury to another; or
> (B) Uses or displays a deadly weapon.

Tenn. Code Ann. § 39-13-102(a) (1997). Tennessee Code Annotated section 39-13-101(a)(1) and (2) (1997) provides that a person commits assault who intentionally or knowingly causes another to reasonably fear imminent bodily injury.

We conclude that the State adduced ample evidence to convict the appellant of aggravated assault as charged in the indictment. In reaching this conclusion, we note that a motor vehicle can be a deadly weapon within the meaning of Tennessee Code Annotated section 39-13-102. See State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). Moreover, as previously noted, the victim testified that the appellant struck the victim with her car, knocked her down, and attempted to run over her three or four times. Additionally, the appellant admitted that she struck the victim with her vehicle. The victim was hospitalized and underwent surgery for her injuries. At trial, the victim testified that she sustained permanent and disabling injuries.

The appellant's own description of events details how, after she struck the victim with the vehicle, she drove into the victim's car, placed her own car in reverse, and struck the victim's porch. While the appellant was exhibiting her less than desirable driving skills, the victim was rolling around in the yard, attempting to avoid the appellant's vehicle. The appellant asserted that she "was in a zone," and her actions were not intentional. As we have stated, the jury, not the appellate courts, determine the credibility of the witnesses and the weight and value to be given their testimony. The jury, as they were free to do, chose to accredit the evidence presented by the State. This issue is without merit.

The appellant was also convicted of felony reckless endangerment. See Tenn. Code Ann. § 39-13-103 (1997). The indictment alleged that the appellant "did unlawfully, recklessly engage in conduct which placed another person, to wit: Barbara Miller in imminent danger of death or serious bodily injury, said offense accomplished with a deadly weapon, to wit: a motor vehicle." Tennessee Code Annotated section 39-11-106(31) (1997), in pertinent part, explains:

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

The appellant's own testimony at trial offers a descriptive summary of the offense, aptly detailing her reckless behavior. Moreover, the victim testified that the appellant "tried to run over" her three or four times. Subsequently, the appellant drove into the victim's yard, struck the porch, and left "deep tracks" in the victim's yard. The victim testified that she was fearful and was forced to roll on the ground to avoid another injury. As we have noted, a motor vehicle can be a deadly weapon. This issue is without merit.

In a somewhat conclusory argument, the appellant maintains that her conviction of aggravated assault is inconsistent with her conviction of leaving the scene of an accident. The appellant essentially argues that an intentional aggravated assault and an "accident" cannot occur simultaneously. Therefore, she contends that this court "should reverse the convictions for aggravated assault and reckless endangerment . . . and remand the case to the trial court for sentencing in accordance with the finding of guilt in the leaving the scene of an accident."

In State v. Larry Douglas Bowman, No. 1315, 1991 Tenn. Crim. App. LEXIS 518, at *10 (Knoxville, June 24, 1991), this court rejected a defendant's contention that the word "accident" contained in the leaving the scene of an accident statute did not encompass intentional conduct. This court observed that in making it a crime to leave the scene of an accident, the legislature intended "to assist those who are victims of damage or injury from the operation of automobiles by others." Id. This court further concluded that the defendant's contention would

defeat this legislative purpose. Id.; see also State v. Ronald D. Correll, No. 03C01-9809-CC-00318, 1999 Tenn. Crim. App. LEXIS 990, at *15 (Knoxville, Oct. 8, 1999). In the instant case, the appellant's argument is likewise without merit.

The indictment alleged that the appellant was involved in a motor vehicle accident and "failed to remain at the scene of said accident until she had fulfilled the requirements of T.C.A. 55-10-103 . . . all in violation of T.C.A[.] 55-10-102." Tennessee Code Annotated section 55-10-102(a) (1998) provides:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible, but shall forthwith return to and in every event shall remain at the scene of such accident until that person has fulfilled the requirements of § 55-10-103.

The record reflects that the appellant was convicted of the aggravated assault of the victim, while the conviction of leaving the scene of an accident resulted from the appellant's vehicle striking the victim's parked and unoccupied vehicle as the appellant drove from the scene. The appellant admitted that her vehicle struck the victim's vehicle and "busted out the headlight" of the victim's vehicle. The appellant further admitted that after striking the vehicle she immediately drove away. We find no merit in the appellant's argument.

Our review of the record reflects that the trial court correctly merged the appellant's convictions of reckless endangerment and aggravated assault and imposed a five-year community corrections sentence for the aggravated assault conviction. However, the record does not reflect that the trial court entered a judgment for the leaving the scene of an accident conviction nor was this conviction addressed at the sentencing hearing.[1] Therefore, this matter is remanded to the trial court for entry of a judgment of conviction for leaving the scene of an accident and for further proceedings pursuant to Tennessee Code Annotated section 55-10-102(b)(2).

---

[1] In its brief, the State contends that the appellant's conviction for leaving the scene of an accident was also merged with the reckless endangerment and aggravated assault convictions. However, there is no proof in the record of such a merger. Additionally, we note that in the instant case, leaving the scene of an accident is a Class C misdemeanor, and the punishment for leaving the scene of an accident is set forth in Tennessee Code Annotated section 55-10-102(b)(2). The State presented proof at the sentencing hearing that the damages exceeded four hundred dollars ($400). See id. at (b)(1).

### III.  Conclusion

In sum, we remand to the trial court for entry of a judgment of conviction on leaving the scene of an accident and for further proceedings consistent with this opinion.  In all other respects, the judgments of the trial court are affirmed.

_____
NORMA McGEE OGLE, JUDGE